```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


SHANE BAKER,

        Plaintiff,

        v.                              Case No. 2:13-cv-0034
                                        Judge Smith
                                        Magistrate Judge King

JOEL E. KAYE, M.D., et al.,

        Defendants.
```

### REPORT AND RECOMMENDATION

Plaintiff Shane Baker, a former inmate at the Pickaway Correctional Institution ("PCI"), filed this action under 42 U.S.C. § 1983 against various employees of PCI and the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging that defendants acted with deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment to the United States Constitution.  The *Amended Complaint*, ECF 11, also alleges state law claims for medical negligence and violations of O.A.C. § 5120:1-8-19, O.A.C. § 5120:1-8-09, and O.R.C. § 5120.01.  The only claims remaining pending in this case are plaintiff's claims under 42 U.S.C. § 1983 alleging deliberate indifference on the part of defendants Andrew Eddy, M.D., and John Gardner in their individual capacities.  *See Report and Recommendation*, ECF 17, p. 12-13; *Order*, ECF 19; *Preliminary Pretrial Order*, ECF 23.  This matter is now before the Court on *Defendants John Gardner and Dr. Andrew Eddy's Motion for Summary Judgment* ("*Defendants' Motion*"), ECF 41.  Plaintiff opposes *Defendants' Motion*,

*Opposition to Motion of Summary Judgment* ("*Plaintiff's Response*"), ECF 44, and defendants have filed a reply. *Defendants' Reply*, ECF 47. For the reasons that follow, it is **RECOMMENDED** that *Defendants' Motion*, ECF 41, be **GRANTED**.

I.  **Background**

Plaintiff alleges that, while he was incarcerated at PCI, defendants acted under color of state law and in their individual capacities to deny him medical care in contravention of the Eighth Amendment to the United States Constitution. *Amended Complaint*, ¶ 5. Plaintiff specifically alleges that he was denied necessary treatment for a broken hand. *Id*. at ¶¶ 25-32.

On February 24, 2011, plaintiff reported to a nurse at PCI that he had fallen on his left hand the previous day; the nurse wrapped plaintiff's hand in an Ace bandage. ECF 43-1, p. 15. An x-ray revealed a transverse fracture extending from the mid shaft of the fourth metacarpal, a mild apex dorsal angulation, and an approximate three millimeter medial displacement. *Id*. at p. 12. Nneka Ezeneke, M.D., reviewed the x-ray on February 24, 2011, spoke with a hand surgeon, and concluded that plaintiff did not require further emergency evluation. *Id*. at pp. 10, 15. Dr. Ezeneke placed plaintiff's hand in a splint and completed a consultation request for plaintiff to be seen at a hand clinic. *Id*. at pp. 10-11.

Dr. Ezeneke's consultation request was discussed on February 24, 2011 during a collegial review session with Dr. Ezeneke and defendants Dr. Eddy, the State Medical Director for ODRC, *Affidavit of Dr. Andrew Eddy* ("*Dr. Eddy Affidavit*"), ECF 43-1, ¶ 4, and Gardner, the Regional

2

Nurse Practitioner for ODRC, *Affidavit of John Gardner* ("*Gardner Affidavit*"), ECF 43-3, ¶ 5. The three concluded that plaintiff should wear the splint for six weeks, that the fracture would most likely heal, and that Dr. Ezeneke would reconsider the course of action taken if a future x-ray revealed significant deformity or angulation. *Id*. at p. 10; *Dr. Eddy Affidavit*, ¶¶ 9-10; *Gardner Affidavit*, ¶¶ 9-10.

Plaintiff submitted a health services request and treated with a nurse on March 3, 2011. ECF 43-1, p. 16. Plaintiff failed to appear at doctor's sick call on March 8, 2011. *Id*. at p. 17. Plaintiff was evaluated by a nurse on March 11, 2011, for a "fight check" and was referred to doctor's sick call. *Id*. At the March 14, 2011 doctor's sick call, plaintiff was infromed that Dr. Ezeneke had ordered the splint to remain in place for six weeks. *Id*. Plaintiff was also prescribed ibuprofen for pain. *Id*. at p. 18.

Plaintiff submitted a health services request on April 5, 2011, for complaints of continued hand pain. *Id*. at pp. 17, 19. Plaintiff was evaluated by a nurse that same day and was referred to doctor's sick call. *Id*. at pp. 17, 20. Plaintiff's left hand was x-rayed for a second time on April 7, 2011. The x-ray again revealed a fracture extending transversely across the mid shaft of the fourth metacarpal, mild apex dorsal angulation and bridging callous. *Id*. at p. 14. Charles H. Muncrief, D.O., diagnosed a healing fracture of the fourth metacarpal. *Id*. Plaintiff was seen in doctor's sick call on April 8 and April 22, 2011. *Id*. at pp. 21-22. The April 7, 2011 x-ray was reviewed on both occasions and, on April 22, 2011, it was noted that plaintiff's hand was healing. *Id*. Another x-ray was ordered to be

taken in six weeks; it was noted that plaintiff would benefit from an evaluation and treatment at a hand clinic.  *Id*.

A second consultation request for treatment at a hand clinic was submitted on April 22, 2011.  *Id*. at p. 13.  This request was discussed in a collegial review session with Dr. Ezeneke, Dr. Eddy, and Gardner on April 29, 2011.  *Dr. Eddy Affidavit*, ¶ 12; *Gardner Affidavit*, ¶ 12.  The April 7, 2011 x-ray was discussed and it was determined that, because the fracture was healing and because it usually takes a few months for a bone to harden, plaintiff should stay in the splint and follow-up x-rays should be taken.  *Dr. Eddy Affidavit*, ¶ 12; *Gardner Affidavit*, ¶ 12.

A third x-ray, taken on June 1, 2011, revealed a "fracture of the mid portion of the fourth metacarpal . . . with evidence of healing progress noted with callous formation."  ECF 43-1, p. 23.  Comparison with the April 7, 2011 x-ray revealed "evidence of increasing callous formation indicative of progressive healing" and "[s]olid bony union is not evident as yet."  *Id*.  Plaintiff was prescribed ibuprofen, his hand continued to be wrapped, and an x-ray was ordered to be taken in one month.  *Id*. at pp. 22, 24.

Plaintiff submitted a health services request and was evaluated by a nurse on June 16, 2011, for pain in his hand.  *Id*. at pp. 25-26.  Plaintiff described the pain as throbbing and intermittent; he reported that pain medication was not helpful.  *Id*. at p. 25.  Plaintiff was given ibuprofen and referred to doctor's sick call.  *Id*.  Plaintiff was seen in doctor's sick call on June 20, 2011.  *Id*. at p. 26.  The doctor noted that plaintiff's hand was healing. Plaintiff was

4

encouraged to continue wrapping his hand, and was prescribed ibuprofen.  *Id*.

A fourth x-ray was taken on July 11, 2011.  *Id*. at p. 27.  "The transverse fracture in the mid shaft of the fourth metacarpal [was] almost healed," "[c]allous formation [was] solid," and there was "[n]o change in position or acute complication from 6/1/11."  *Id*.

On September 11, 2011, after his release from prison, plaintiff was treated by Ramesh C. Gupta, M.D., at Miami Valley Hospital. *Plaintiff's Response*, Exhibit 22.  Plaintiff was diagnosed with finger stiffness, was given ibuprofen, and was instructed to follow up with the Miami Valley Hospital Hand Clinic.  *Id*.  Plaintiff underwent hand therapy on five occasions from October 19, 2011, through November 16, 2011.  *Id*. at Exhibits 24-39.

Plaintiff underwent surgery on his left ring and left little fingers on December 21, 2011.  *Id*. at Exhibits 40-41.  The surgeon, Eugene Kim, M.D., described plaintiff's prior treatment as conservative and noted that plaintiff "had limited flexion of his left ring and small fingers that have been refractory to extensive physical therapy."  *Id*.  Dr. Kim diagnosed flexor tendon adhesions of the left ring finger and left small finger.  *Id*.  The surgery included flexor tenolysis and A1 pulley release on the left ring and small fingers, as well as a tenolysis and carpal tunnel release of the left flexor tendons at the wrist.  *Id*.

James Elmes, M.D., provided an *Affidavit of Merit* in which he opines that the medical treatment provided by defendants was negligent and "caused injury" to plaintiff.  *Id*. at Exhibit 43.

5

**II.	Standard**

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which

6

demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. Discussion

Plaintiff asserts claims against Dr. Eddy and John Gardner in their individual capacities pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law, and (2) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any

7

substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

In the case presently before the Court, plaintiff alleges that defendants acted with deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution because they failed to provide necessary treatment of plaintiff's broken hand.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. In order to prevail on his claims against each defendant, plaintiff must prove that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). This standard includes both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). However, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Id*. (quoting *Farmer*, 511 U.S. at 835). "Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id*. (quoting *Farmer*, 511 U.S. at 836).

In the case presently before the Court, the evidence is insufficient to find that defendants acted with the requisite mental intent. Plaintiff injured his left hand when he slipped and fell on an icy step at PCI on February 23, 2011. *See Amended Complaint*, ¶ 10; ECF 43-1, p. 15. Plaintiff was treated by a nurse and Dr. Ezeneke; x-rays were administered and plaintiff was provided ibuprofen, a splint, and an Ace bandage by February 24, 2011. ECF 43-1, pp. 10-12, 15. Dr. Ezeneke reviewed the x-ray and spoke with a hand surgeon, determined that an emergency department evaluation was not necessary, and requested a consultation with a hand clinic. *Id*. at pp. 10, 15. Dr. Ezeneke discussed her request with defendants Dr. Eddy and Gardner in a collegial review session on February 24, 2011 to determine whether the request was medically necessary. *See id*. at p. 10; *Dr. Eddy Affidavit*, ¶¶ 8-10; *Gardner Affidavit*, ¶¶ 8-10. The three concluded that the fracture would most likely heal on its own, that plaintiff should wear the splint for six weeks, and that Dr. Ezeneke would reconsider the course of action taken if a future x-ray revealed significant deformity or angulation. *See* ECF 43-1, p. 10; *Dr. Eddy Affidavit*, ¶¶ 8-10; *Gardner Affidavit*, ¶¶ 8-10.

Dr. Ezeneke, Dr. Eddy, and Gardner discussed plaintiff's course of treatment again on April 29, 2011, to determine whether a referral to a hand clinic was medically necessary. *Dr. Eddy Affidavit*, ¶¶ 9, 12; *Gardner Affidavit*, ¶¶ 9, 12. Plaintiff's April 7, 2011 x-ray was discussed, and it was determined that plaintiff should remain in the splint and that follow-up x-rays should be taken. *Dr. Eddy Affidavit*, ¶ 12; *Gardner Affidavit*, ¶ 12. This decision was premised on the

9

April 7, 2011 x-ray which was read as indicating "that the fourth metacarpal fracture was healing, a bridging callous was noted, that it was in the same position, but that the bone had not yet hardened, which usually takes a few months." *Dr. Eddy Affidavit*, ¶ 12; *Gardner Affidavit*, ¶ 12.

There is no evidence that Dr. Eddy or Gardner had any involvement in plaintiff's medical treatment after April 7, 2011. *See Dr. Eddy Affidavit*, ¶ 13 ("There were no more Consultation Requests and, therefore, Baker's medical condition was never again discussed during the collegial review process."); *Gardner Affidavit*, ¶ 13 (same). Plaintiff nevertheless continued to receive medical treatment at PCI. A June 1, 2011 x-ray revealed "evidence of healing[:] progress noted with callous formation." ECF 43-1, p. 23. A fourth x-ray performed on July 11, 2011 revealed that the "transverse fracture in the mid shaft of the fourth metacarpal [was] almost healed," "[c]allous formation [was] solid," and there was "[n]o change in position or acute complication from 6/1/11." *Id*. at p. 27.

Although there is evidence that Dr. Eddy and Gardner were aware of plaintiff's hand injury, there is no evidence to suggest that either defendant subjectively perceived facts from which to draw an inference that failure to refer plaintiff to a hand specialist created a substantial risk of harm to plaintiff. To the contrary, the April 7, 2011 x-ray revealed a healing fracture, ECF 43-1, p. 14, the June 1, 2011 x-ray revealed "evidence of healing progress . . . with callous formation," *id*. at p. 23, and the July 11, 2011 x-ray revealed that the fracture in plaintiff's fourth metacarpal was "almost healed"

10

and that "[n]o change in position or acute complication from 6/1/11" was noted. *Id*. at p. 27.

Moreover, there is no evidence in the record that surgical repair was the only acceptable method of treating plaintiff's fractured fourth metacarpal. The only evidence presented by plaintiff that his medical care was inadequate is an *Affidavit of Merit* in which plaintiff's expert, Dr. Elmes, states merely that the treatment administered by defendants was "negligent." *Plaintiff's Response*, Exhibit 43. However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle*, 429 U.S. at 106, and even negligent medical care in the prison context does not rise to the level of a constitutional deprivation. *Farmer*, 511 U.S. at 835. Accordingly, plaintiff has not satisfied the subjective component of his deliberate indifference claims. Although plaintiff may disagree with his course of medical treatment, he has failed to articulate facts or produce evidence even suggesting that Dr. Eddy or Gardner acted with deliberate indifference to plaintiff's medical condition.

Plaintiff has not raised a genuine issue of material fact and defendants are therefore entitled to judgment as a matter of law on all of plaintiff's remaining claims. It is therefore **RECOMMENDED** that *Defendants' Motion*, ECF 41, be **GRANTED.**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part

11

thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 16, 2015                                 *s/Norah McCann King*
                                                  Norah M<sup>c</sup>Cann King
                                            United States Magistrate Judge